**AVANT PETROLEUM, INC., Petitioner,**

v.

**PECTEN ARABIAN LIMITED,**
**Respondent.**

No. 88 Civ. 4970 (LLS).

United States District Court,
S.D. New York.

Oct. 4, 1988.

---

Coudert Bros., New York City (William Rand, Evan W. Gray, of counsel), for petitioner.

Cadwalader, Wickersham & Taft, New York City (Grant B. Hering, Kay W. Gardiner, of counsel), for respondent.

## OPINION AND ORDER

STANTON, District Judge.

Petitioner Avant Petroleum, Inc. petitions to compel arbitration and for the appointment of an arbitrator over its commercial dispute with respondent Pecten Arabian Limited. The petition is granted.

### Facts

With one exception, the facts are undisputed. On March 2, 1981 Avant Petroleum, Inc. ("Avant") orally agreed to buy approximately 425,000 barrels of crude oil from Pecten Arabian Limited ("Pecten"). The confirming telex states that "[a]ny differences and disputes of whatsoever nature shall be put to arbitration in the City of New York, N.Y."

Pecten's supplier of the crude oil that it sold to Avant was Mitsubishi Corporation ("Mitsubishi"). Avant in turn agreed to resell the oil to Coastal (Bermuda) Limited ("Coastal").

Mitsubishi failed to deliver the crude oil to Pecten. This prevented Pecten from delivering it to Avant, which prevented Avant from delivering it to Coastal. Avant then billed Pecten for $110,500.00 in lost profits and $457,113.83 claimed by Coastal as a result of Avant's breach.

On February 9, 1983 Pecten demanded that Avant arbitrate both claims pursuant to the agreement and simultaneously served a notice of intention to arbitrate upon Mitsubishi. In each notice, Pecten requested that Mitsubishi and Avant agree to a consolidation of the arbitrations.

On May 9, 1983 attorneys for Avant, Pecten and Mitsubishi met to discuss the

disputes and the possibility of a consolidated proceeding. Avant claims that Avant and Pecten agreed to defer their pending arbitration until Pecten had resolved its dispute with Mitsubishi. Pecten denies any such agreement.

By letter of March 22, 1985, Pecten informed Avant that Pecten and Mitsubishi were proceeding with their arbitration and invited Avant to explore the possibility of a consolidated arbitration. Avant and Pecten corresponded about it but did not agree. The Mitsubishi–Pecten arbitration concluded with an award dated August 11, 1986.

By letter of April 20, 1988, Avant informed Pecten that it wished to resolve the pending dispute between the two parties by arbitration. Pecten refuses to go forward with the arbitration, claiming that Avant is not a "party aggrieved" under the Federal Arbitration Act, that Avant's claim is time barred, and that Avant waived its right to judicial enforcement of the arbitration clause.

## Discussion

1. *Avant's status as a "party aggrieved" under 9 U.S.C. § 4*

The Federal Arbitration Act (the "Act") provides, in pertinent part:

> A party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration may petition any United States district court which, save for such agreement, would have jurisdiction under Title 28, ... for an order directing that such arbitration proceed in the manner provided for in such agreement.... The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement.

9 U.S.C.A. § 4 (West 1970).

■ To grant a petition to compel arbitration under Section 4, the court must determine that (1) the dispute is covered by a written agreement to arbitrate, and (2)

the petitioner has been aggrieved by the respondent's failure, neglect or refusal to arbitrate. *See Conticommodity Services, Inc. v. Philipp & Lion*, 613 F.2d 1222, 1225 (2d Cir.1980).

■ Pecten concedes that the dispute is covered by a written agreement to arbitrate but contests whether Avant is a "party aggrieved" within the Statute. Essentially, Pecten claims that since it made a demand to arbitrate in 1983, it cannot be held to have failed, neglected or refused to arbitrate. Pecten's support for this proposition is *Aaacon Auto Transport, Inc. v. Barnes*, 603 F.Supp. 1347 (S.D.N.Y.1985).

In *Aaacon*, plaintiff Aaacon filed a complaint in federal district court for breach of a contract which provided for arbitration. Defendant Barnes then demanded arbitration of his own claims of breach in Washington, D.C. and moved for a stay pending arbitration. Aaacon also moved for an order to compel Barnes to arbitrate, but in New York rather than Washington, D.C. Thus, both parties were willing to arbitrate but disagreed about where it should take place.

The Court granted the motion to stay because the issues presented (the duration of the written arbitration agreement and the proper venue for arbitration) were issues for resolution by the arbitrator and not by the court. In *dictum*, the Court stated that:

> [i]n any case, Aaacon is not entitled under section four to an order compelling arbitration because Aaacon is not, as it must be to invoke section four, a "party aggrieved by the alleged failure, neglect, or refusal of another to arbitrate under a written agreement for arbitration." Barnes has not failed, neglected, or refused to arbitrate. On the contrary, he has already made a demand for arbitration of his own claims before the AAA and now moves to stay this action so that all claims arising from the ... agreement may be arbitrated....

*Id.* at 1349.

Respondent's reliance on *Aaacon* is misplaced. In *Aaacon*, the respondent was

willing to proceed with arbitration at the time petitioner filed his motion to compel arbitration. Here, Pecten at present refuses to arbitrate. When Pecten was willing to arbitrate in 1983 Avant was not a "party aggrieved" by a refusal to arbitrate, but it is "aggrieved" by Pecten's refusal to arbitrate now. To hold otherwise would vitiate the strong policy behind the Federal Arbitration Act favoring arbitration. "[A]ny doubts as to the construction of the Act ought to be resolved in line with its liberal policy of promoting arbitration.... Such policy has been consistently reiterated by the federal courts and we think it deserves to be heartily endorsed." *Robert Lawrence Co. v. Devonshire Fabrics, Inc.,* 271 F.2d 402, 410 (2d Cir.1959), *cert. dismissed,* 364 U.S. 801, 81 S.Ct. 27, 5 L.Ed.2d 37 (1960). *See also Moses H. Cone Memorial Hosp. v. Mercury Const.,* 460 U.S. 1, 25, 103 S.Ct. 927, 941–42, 74 L.Ed.2d 765 (1983).

Pecten also contends that Avant is not a "party aggrieved" within the meaning of Section 4 because Avant allegedly refused Pecten's demand for arbitration, and that Pecten consequently abandoned its demand. Avant claims it never refused to arbitrate. Rather, it says, Pecten and Avant agreed to defer arbitration until the Pecten–Mitsubishi dispute was settled.

The factual dispute is immaterial because as a matter of law a prior refusal by the petitioner to arbitrate does not waive or extinguish his right to later demand arbitration. *World Brilliance Corp. v. Bethlehem Steel Co.,* 342 F.2d 362, 365 (2d Cir. 1965).

Pecten's claim that it abandoned its own demand to arbitrate is immaterial. It is not Pecten who seeks arbitration.

### 2. *Statute of Limitations*

Pecten next attacks Avant's petition on the ground that the petition is barred by the applicable statute of limitations.[1]

1. It is proper for the court to address the timeliness of the petitioner's right to seek judicial enforcement of the arbitration agreement. The court leaves the question of the timeliness of the claims subject to arbitration to the arbitrator.

Since the Federal Arbitration Act contains no limitation on the time to seek enforcement of an arbitration agreement, we apply the most analogous limitations period under New York law. *Robinson v. Pan American World Airways,* 777 F.2d 84, 86 (2d Cir.1985).

■ Although Pecten urge the four year limit on actions for breach of contracts for the sale of goods, New York Uniform Commercial Code § 2–725(1) (McKinney 1964), the law is clear in the Second Circuit that the limitation applicable to arbitration agreements is the six year time period for contract actions in general. N.Y.Civ.Prac.L.R. § 213(2) (McKinney 1971). *See Reconstruction Finance,* 204 F.2d at 369, *Conticommodity,* 613 F.2d at 1225. Moreover, the cause of action does not begin to accrue until one of the parties breaches the arbitration agreement by refusing to arbitrate. *Reconstruction Finance,* 204 F.2d at 369, *Conticommodity,* 613 F.2d at 1225. Therefore, the six year statute of limitations period only began to run when Pecten refused to arbitrate in 1988. Avant's petition is timely.

### 3. *Waiver*

■ Pecten also argues that Avant waived its right to arbitrate. To constitute a waiver, the party's conduct must: 1) evidence an intent to relinquish the right to arbitrate and 2) prejudice the non-waiving party. *Marine Transport Lines v. Int'l. Org. of Masters, Mates & Pilots,* 609 F.Supp. 282 (S.D.N.Y.1985). Waiver is not to be lightly inferred, and the burden of establishing it is heavy. *Id.* at 284.

■ Although Pecten claims Avant has waived its right to arbitrate, it recognizes that its authorities stand only for the proposition that "a party who delays making a demand under the arbitration clause forgoes its right to compel arbitration on *its own terms.*" (emphasis added). *Respondent's Brief in Opposition* at 9. Avant

See *Conticommodity,* 613 F.2d at 1225, *Reconstruction Finance Corp. v. Harrisons & Crosfield,* 204 F.2d 366, 369 (2d Cir.), *cert. denied,* 346 U.S. 854, 74 S.Ct. 69, 98 L.Ed. 368 (1953).

has not demanded arbitration on particular terms, but only under the agreement and statute.

Regardless, the Court defers the issue of waiver to the arbitrator. "It would be hard to imagine an arbitration clause having greater scope than the one before us." *Robert Lawrence* at 412. Such broad arbitration clauses have been consistently construed in this Circuit to leave the question of waiver to the arbitrator. *See World Brilliance* at 364, *Gallo Wine Sales v. Wholesale Wine Salesmen's Union,* 511 F.Supp. 785, 792–793 (S.D.N.Y.1981).

### 4. *Appointment of Arbitrator*

Section 5 of the Act provides in pertinent part:

> If in the agreement provision be made for a method of naming or appointing an arbitrator ... such method shall be followed; but if no method be provided therein ... then upon the application of either party to the controversy the court shall designate and appoint an arbitrator or arbitrators ... who shall act under the said agreement with the same force and effect as if he or they had been specifically named therein; and unless otherwise provided in the agreement the arbitration shall be by a single arbitrator.

9 U.S.C. § 5 (West 1970).

A conference with counsel will be held on October 28, 1988 at 9:30 a.m. to discuss the selection of an arbitrator, unless the parties agree upon that issue and so notify the court before then.

So ordered.