**PUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

───────────

**No. 21-1153**

───────────

LIGHTHOUSE FELLOWSHIP CHURCH,

       Plaintiff – Appellant,

    v.

RALPH NORTHAM, in his official capacity as Governor of the Commonwealth of Virginia,

       Defendant – Appellee.

───────────

Appeal from the United States District Court for the Eastern District of Virginia, at Norfolk. Arenda L. Wright Allen, District Judge. (2:20-cv-00204-AWA-RJK)

───────────

Argued: October 27, 2021               Decided: December 14, 2021

───────────

Before KING, AGEE, and THACKER, Circuit Judges.

───────────

Vacated and remanded by published opinion. Judge King wrote the opinion, in which Judge Agee and Judge Thacker joined.

───────────

**ARGUED:** Daniel Joseph Schmid, LIBERTY COUNSEL, Orlando, Florida, for Appellant. Michelle Shane Kallen, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee. **ON BRIEF:** Mathew D. Staver, Anita L. Staver, Horatio G. Mihet, Roger K. Gannam, LIBERTY COUNSEL, Orlando, Florida, for Appellant. Mark R. Herring, Attorney General, Samuel T. Towell, Deputy Attorney General, Jacqueline C. Hedblom, Assistant Attorney General, Toby J. Heytens, Solicitor General, Jessica Merry Samuels, Deputy Solicitor General, Kendall T. Burchard, John

Marshall Fellow, OFFICE OF THE ATTORNEY GENERAL OF VIRGINIA, Richmond, Virginia, for Appellee.

KING, Circuit Judge:

Plaintiff Lighthouse Fellowship Church initiated this civil action in the Eastern District of Virginia in April 2020 against defendant Ralph Northam, the Governor of Virginia, challenging the legality of executive orders the Governor issued to combat the spread of COVID-19. Lighthouse Church alleged that Governor Northam's executive orders discriminated against its religious exercise, in contravention of various constitutional and statutory provisions. The Complaint named Governor Northam in his official capacity only, seeking, inter alia, declaratory and injunctive relief. Nine months later, the district court ruled that Governor Northam was entitled to sovereign immunity under the Eleventh Amendment and dismissed the proceedings. *See Lighthouse Fellowship Church v. Northam*, No. 2:20-cv-00204 (E.D. Va. Jan. 27, 2021), ECF No. 61 (the "Dismissal Order"). Lighthouse has appealed from the Dismissal Order.

The specific executive orders that Lighthouse Church challenged expired in June of 2020, and the state of emergency in Virginia upon which they were predicated ended on July 1, 2021. The end of the state of emergency terminated all outstanding COVID-19-related executive orders. Lighthouse nevertheless contends on appeal that these proceedings are not moot because two exceptions to the mootness doctrine are applicable: first, the "voluntary cessation" exception and, second, the exception for "wrongs capable of repetition yet evading review." As explained below, we are satisfied that neither of those exceptions applies and that no live controversy exists. Consequently, we vacate the judgment and remand for dismissal of this action as moot.

3

I.

A.

Lighthouse Church, a subsidiary of a religious organization incorporated in Maryland, has a small church in Accomack County, Virginia, where it conducts regular worship services. Lighthouse challenged two of the executive orders issued by Governor Northam to slow the spread of COVID-19 in Virginia, asserting that they restricted Lighthouse's ability to conduct in-person worship services in the early months of the pandemic. The Complaint alleged that those orders — Executive Order 53 ("EO 53") and Executive Order 55 ("EO 55") — contravened the Constitutions of both the United States and Virginia, as well as federal and state statutes, because they discriminated against religious exercise.

On March 12, 2020, Governor Northam, by Executive Order 51 ("EO 51"), declared a state of emergency in Virginia due to the spread of COVID-19. The declaration of emergency authorized the Governor to issue executive orders to manage the emergency. *See* Va. Code § 44-146.17. To that end, EOs 53 and 55 were then issued to impose various restrictions on both public and private gatherings. EO 53, issued on March 23, 2020, placed a 10-person cap on all public and private gatherings and closed most businesses and non-business entities. EO 53, however, exempted several categories of businesses, including for example liquor stores — but not churches — from the 10-person cap. EO 55, which took effect just a week later on March 30, 2020, required "[a]ll individuals in Virginia [to]

remain at their place of residence," with certain exceptions. *See* J.A. 68.[1] Important here, EO 55 reiterated that the 10-person cap on gatherings imposed by EO 53 remained in place.

Governor Northam, pursuant to his statutory authority under Virginia Code section 44-146.17(1), specified in EOs 53 and 55 that violations thereof were punishable as a Class 1 misdemeanor. Lighthouse Church contravened EOs 53 and 55 on April 5, 2020, when it conducted a church service in Accomack County with 16 persons in attendance, six more than authorized. This church service led to the issuance of a criminal citation against the pastor, a man of the cloth named Kevin Wilson.[2]

B.

Following the April 5, 2020 church service and citation, the evolving public health situation in Virginia prompted several new executive orders. Shortly after EOs 53 and 55 took effect, Governor Northam and his team developed a phased reopening plan that would restart activities in Virginia and gradually return the life of the Commonwealth and its citizens to normal. Each phase of the reopening plan provided specific exceptions for religious services, and Lighthouse Church does not maintain that any of the executive orders issued subsequent to EOs 53 and 55 discriminated against religious exercise.

---

[1] Citations herein to "J.A. __" refer to the contents of the Joint Appendix filed by the parties in this appeal.

[2] According to Lighthouse Church's lawyers, Pastor Wilson was accorded a *nolle prosequi* by the Commonwealth's Attorney for Accomack County. *See* Br. of Appellant 11-12. His prosecution was thus terminated.

The reopening plan had three phases. Phase One thereof, which began in Accomack County on May 29, 2020, exempted attendance at religious services from the general 10-person gathering limit specified in EO 53. During that phase, attendance at religious services was limited to "50% of the lowest occupancy load on the certificate of occupancy of the room or facility in which the religious services [were] conducted." *See* J.A. 274. Phase Two of the reopening plan, which began on June 5, 2020, prohibited gatherings of more than 50 persons, but contained an exception for religious services, allowing them to continue at 50% capacity. Phase Three, effective on July 1, 2020, exempted religious services from the otherwise applicable 250-person gathering limit, effectively eliminating restrictions on the number of individuals that could gather and attend in-person religious services.

On May 28, 2021, Governor Northam issued Executive Order 79, which ended nearly all COVID-19-related restrictions in Virginia, including all caps on in-person gatherings. Finally, on July 1, 2021, the state of emergency in Virginia ended and all remaining COVID-19-related executive orders were terminated.

C.

Lighthouse Church filed its Complaint against Governor Northam in the Eastern District of Virginia on April 24, 2020, when EOs 53 and 55 were yet in effect. The Complaint alleged that EOs 53 and 55 contravened the United States Constitution's First Amendment, Fourteenth Amendment, and Guarantee Clause; the federal Religious Land Use and Institutionalized Persons Act; several provisions of Virginia's Constitution; and

6

the Virginia Act for Religious Freedom. With the Complaint, Lighthouse filed a motion for a temporary restraining order ("TRO") and a preliminary injunction.

On May 1, 2020, the district court entered an order denying the requested TRO and preliminary injunction. *See Lighthouse Fellowship Church v. Northam*, No. 2:20-cv-00204 (E.D. Va. May 1, 2020), ECF No. 16. Lighthouse Church then lodged an immediate appeal from the preliminary injunction denial to this Court. On October 13, 2020, we dismissed Lighthouse's appeal as moot. *See Lighthouse Fellowship Church v. Northam*, No. 20-1515 (4th Cir. Oct. 13, 2020), ECF No. 31.[3]

On July 6, 2020, Governor Northam moved in the district court for dismissal of the Complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). By its Dismissal Order of January 27, 2021, the court ruled in Governor Northam's favor and dismissed the Complaint under Rule 12(b)(1), concluding that all claims alleged against the Governor were barred by the Eleventh Amendment. In dismissing the lawsuit, the court also denied a flawed request by Lighthouse Church to amend the Complaint. Although the court invited Lighthouse to file a proper motion to amend, Lighthouse did not do so. Lighthouse has timely appealed from the Dismissal Order, and we possess jurisdiction pursuant to 28 U.S.C. § 1291.

---

[3] For reasons explained later, our dismissal on mootness grounds of Lighthouse Church's appeal from the denial of the preliminary injunction has no bearing on our resolution of this appeal. *See infra* note 5.

## II.

On appeal, Lighthouse Church first contends — as it must — that this dispute has not been mooted by the circumstances now presented. It also maintains that the district court erred in ruling in its Dismissal Order that Governor Northam was entitled to sovereign immunity under the Eleventh Amendment. For his part, Governor Northam disagrees with both of Lighthouse's appellate contentions, but argues that we should find mootness without reaching or addressing the immunity issue. We turn immediately to the mootness question and how it should be resolved. *See Biggs v. N. C. Dep't of Pub. Safety*, 953 F.3d 236, 240-41 (4th Cir. 2020).

### A.

The mootness doctrine is rooted in the case-or-controversy limitation on federal judicial power contained in Article III, Section 2 of the Constitution. *See Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 180 (2000). A pending lawsuit is rendered moot "when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." *See Porter v. Clarke*, 852 F.3d 358, 363 (4th Cir. 2017) (quoting *Powell v. McCormack*, 395 U.S. 486, 496 (1969)). A court ruling in those circumstances would constitute an impermissible advisory opinion. *See Preiser v. Newkirk*, 422 U.S. 395, 401 (1975). As we have explained, a case may become moot after the entry of the district court's judgment and while the appeal is pending. *See Mellen v. Bunting*, 327 F.3d 355, 363-64 (4th Cir. 2003).

As explained above, both of the executive orders that Lighthouse Church specifically challenged in its Complaint — EOs 53 and 55 — expired in June of 2020. And

8

all of the COVID-19-related executive orders terminated on July 1, 2021, when the state of emergency in Virginia ended. It is thus clear to us that these proceedings no longer present a live controversy, absent some exception to mootness being applicable. We will thus examine the applicability of the two exceptions asserted by Lighthouse — the "voluntary cessation" exception and the exception for "wrongs capable of repetition yet evading review."[4]

B.

Pursuant to the "voluntary cessation" exception, a civil action does not become moot when a defendant voluntarily ceases its allegedly improper behavior, if there is a reasonable chance that the behavior will resume. The Supreme Court has recognized that the standard for determining whether a pending case "has been mooted by the defendant's voluntary conduct is stringent: A case might become moot if subsequent events made it absolutely clear that the allegedly wrongful behavior could not reasonably be expected to recur." *See Friends of the Earth*, 528 U.S. at 189 (internal quotation marks omitted); *see also Incumaa v. Ozmint*, 507 F.3d 281, 288 (4th Cir. 2007) (explaining that the voluntary cessation exception "does not apply where there is no reasonable expectation that the wrong will be repeated" (internal quotation marks omitted)).

---

[4] Although we use the customary term "exception to mootness" in our analysis, we observe that both exceptions asserted here are not actual exceptions to the Article III case-or-controversy limitation on federal judicial power. Rather, they merely describe limited circumstances where a case is not moot because the plaintiff continues to have a cognizable interest in the outcome that satisfies the Constitution's case-or-controversy requirement.

Although it is not easy to make a sufficient showing that the voluntary cessation exception does not apply, it is not impossible. In fact, in circumstances where a challenged governmental regulation or legislation has expired, the inapplicability of the voluntary cessation exception has been established in several significant situations where mootness has been found. *See, e.g.*, *Trump v. Hawaii*, 138 S. Ct. 377, 377 (Mem.) (recognizing that, because the contested orders suspending entry of aliens and refugees had "expired by their own terms[,] the appeal no longer present[ed] a live case or controversy" (alteration and internal quotation marks omitted)); *Kremens v. Bartley*, 431 U.S. 119, 132 (1977) (ruling that repeal of statute allowing involuntary commitment of juveniles mooted litigation that challenged statute); *Burke v. Barnes*, 479 U.S. 361, 363 (1987) (concluding that expiration of challenged proposed legislation mooted litigation).

EOs 53 and 55 were terminated more than 17 months ago. And it is compelling that all COVID-19-related executive orders issued by Governor Northam subsequent to EOs 53 and 55 contained exceptions for religious exercise and have now ended. Lighthouse Church maintained at oral argument of this appeal, however, that it was under a "constant threat" of reinstatement by the Governor of the restrictions on religious exercise contained in EOs 53 and 55. As primary support for that position, Lighthouse relies on the Supreme Court's decision late last year in *Roman Catholic Diocese of Brooklyn v. Cuomo*, 141 S. Ct. 63 (2020). In that proceeding, the Governor of New York had implemented a color-coded system, imposing severe restrictions on attendance at religious services in geographical areas classified as "red" or "orange" zones. *Id.* at 65-66. When the dispute reached the Court, the Governor had reclassified the zones where the plaintiff houses of

10

worship were located from "orange" to "yellow" — and the "yellow" zone provided for a lower level of unchallenged restrictions on worship services. *Id.* at 68. In those circumstances, the Court ruled that the dispute was not moot. *Id.* As the Court explained, the Governor had regularly "chang[ed] the classification of particular areas without prior notice. If that occurr[ed] again, the reclassification [would] almost certainly bar individuals in the affected area from attending services before judicial relief [could] be obtained." *Id.*[5]

Consistent with the First Circuit's observation in a dispute very similar to this one, we are satisfied that "night-and-day differences separate" the Lighthouse Church's case from the dispute before the Supreme Court in *Catholic Diocese*. *See Bos. Bit Labs, Inc. v. Baker*, 11 F.4th 3, 11-12 (1st Cir. 2021) (concluding that challenge to long-expired COVID-19 restrictions was moot); s*ee also Hawse v. Page*, 7 F.4th 685, 692-94 (8th Cir. 2021) (ruling that appellants lacked standing to sue and that their challenge to long-expired COVID-19 restrictions was moot). That distinction is due to the fact that all executive orders issued by Governor Northam concerning the COVID-19 pandemic expired when the state of emergency in Virginia ended on July 1, 2021. With the termination of the state of emergency, the Governor's power to issue new executive orders involving COVID-19-related restrictions was extinguished.

---

[5] The *Catholic Diocese* decision is the primary reason our dismissal of Lighthouse Church's earlier appeal has no bearing on the resolution of this appeal. *See supra* note 3. If *Catholic Diocese* had been decided before we disposed of the earlier appeal, it might have altered the result. We thus assess this appeal without regard to our disposition of the earlier appeal.

Additionally, the current circumstances are materially different from those present at the outset of the pandemic, when the Supreme Court rendered its *Catholic Diocese* decision. We are now better informed concerning COVID-19. The availability of vaccines and other measures to combat the virus have led to a significant change in the relevant circumstances — including the resumption of pre-COVID-19 activities — as evidenced by the removal of many restrictions. Finally, with the benefit of the *Catholic Diocese* decision — unambiguously barring discrimination against religious institutions during the pandemic without satisfying strict scrutiny review — it is entirely speculative to assert that Governor Northam will declare a new state of emergency in Virginia and reinstate restrictions on religious exercise that have not been in place for more than a year.

A finding of mootness in this action is also entirely consistent with our own precedent. Although we have not heretofore addressed mootness in the specific context of COVID-19-related restrictions, a recent published decision provides strong support for Governor Northam. In June of this year, in *American Federation of Government Employees v. Office of Special Counsel*, 1 F.4th 180 (4th Cir. 2021), we assessed a First Amendment challenge to an advisory opinion of the Office of Special Counsel (the "OSC") about the Hatch Act's application to conduct that occurred during the 2020 election. After the district court ruled — but before the dispute reached this Court — the OSC withdrew its opinion because the 2020 election was over. *Id.* at 184. In rejecting the proposition that the dispute was not moot because the alleged wrong could reoccur, we deemed it unreasonable to expect a recurrence. As Judge Wilkinson carefully explained, "there [was] no whiff of any of the opportunism, on the part of the defendant, that typically supports

invocations of mootness exceptions where voluntary cessation of the challenged conduct is at issue." *Id.* at 188. Observing that the OSC had withdrawn its guidance because of changed circumstances, "not with the aim of avoiding judgment in court," the appeal was dismissed as moot. *Id.* Here, the easing of Virginia's COVID-19-related restrictions occurred gradually — over several months — as Virginia navigated its way through the pandemic. And we are satisfied that the gradual easing of restrictions in the Commonwealth was in response to changed circumstances concerning COVID-19 and not in response to litigation.

Lighthouse Church does not dispute the legality of any executive order that followed EOs 53 and 55. To avoid mootness, it instead argues that the entire regime of Governor Northam's executive orders discriminated against religious exercise because the regime permitted the Governor to impose new restrictions at any time. That contention, however, has no limiting principle. Lighthouse's contention implies that, absent a change in Virginia law that would limit the Governor's emergency powers, this controversy remains live. We decline to rule that such a change in Virginia law is necessary to moot this dispute. Rather, it is "absolutely clear" that the challenged restrictions in EOs 53 and 55 cannot be reasonably expected to be reinstated. *See Friends of the Earth*, 528 U.S. at 189.[6]

---

[6] Our ruling today is also consistent with this Court's decisions in *Pashby v. Delia*, 709 F.3d 307 (4th Cir. 2013), and *Deal v. Mercer County Board of Education*, 911 F.3d 183 (4th Cir. 2018). Lighthouse relies on those decisions for the proposition that, if the government retains authority to resume its behavior, a case is never moot. In both decisions, however, we conducted a factual inquiry into the likelihood of recurrence of the offending behavior and found a recurrence to be likely. That was because the government's termination of the offending behavior was in response to a lawsuit, and retention of (Continued)

C.

We next turn to the exception to mootness for "wrongs capable of repetition yet evading review." This exception applies only if "(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again." *See Fed. Election Comm'n v. Wis. Right to Life, Inc.*, 551 U.S. 449, 462 (2007) (internal quotation marks omitted). And we have recognized this exception to be "a narrow one, reserved for 'exceptional' circumstances." *See Int'l Bhd. of Teamsters, Loc. Union No. 639 v. Airgas, Inc.*, 885 F.3d 230, 237 (4th Cir. 2018) (citation omitted). As we have emphasized, the "party seeking to invoke this exception to the mootness doctrine bears the burden of showing its application." *See Williams v. Ozmint*, 716 F.3d 801, 810 (4th Cir. 2013) (citation omitted).

The first inquiry before us in considering this exception is whether EOs 53 and 55 were inherently limited in duration, which would have prevented them from being fully litigated prior to their expiration. Notably, the Supreme Court has found a period of as long as two years too short to complete judicial review in the context of the exception for wrongs capable of repetition yet evading review. *See Kingdomware Techs., Inc. v. United*

---

authority to resume that behavior weighed strongly against a finding of mootness. *See Pashby*, 709 F.3d at 316; *Deal*, 911 F.3d at 187, 191-92. Moreover, in the *Deal* case, the government was "fighting" to resume the offending program, even after its temporary suspension. *See* 911 F.3d at 192. On the other hand, Governor Northam, having ended the state of emergency in Virginia, cannot issue new COVID-19-related restrictions without first declaring a new state of emergency. And, on this record, the Governor does not seek to reinstate EOs 53 and 55 or anything similar.

14

*States*, 136 S. Ct. 1969, 1976 (2016). And Lighthouse Church argues that, because the lifespans of EOs 53 and 55 were about 30 days, those executive orders were inherently limited in duration. Although Lighthouse has also indicated that it is challenging the entire longer-lasting regime of Governor Northam's executive orders — and not just EOs 53 and 55 — we will assume without deciding that the "inherently limited in duration" requirement has been satisfied.

The second inquiry for this exception — whether there is a reasonable expectation that Lighthouse Church will again be subjected to the challenged acts — is very similar to the analysis of the voluntary cessation exception. The Supreme Court has explained that "a mere physical or theoretical possibility" is insufficient to satisfy this second inquiry. *See Murphy v. Hunt*, 455 U.S. 478, 482 (1982). And as we have elaborated, "conjecture as to the likelihood of repetition has no place in the application of this exceptional and narrow grant of judicial power to hear cases for which there is *in fact a reasonable* expectation of repetition." *See Incumaa*, 507 F.3d at 289 (internal quotation marks omitted). In this situation, there is simply no reasonable expectation that Lighthouse will again be subjected to executive orders along the lines of EOs 53 and 55, which expired in June 2020. Governor Northam has a track record which shows that EOs 53 and 55 — issued at a time of great uncertainty and without the benefit of the Supreme Court's decision in *Catholic Diocese* — will not be reinstated. In the absence of a reasonable expectation that Lighthouse will be subjected to future restrictions such as those in EOs 53

15

and 55, the asserted exception for wrongs capable of repetition yet evading review does not apply. As such, Lighthouse's challenge to EOs 53 and 55 is moot.[7]

\* \* \*

Because the executive orders that Lighthouse Church challenges are no longer in effect and no exception to mootness is applicable, there is presently no live controversy between the parties in these proceedings. And because this civil action is moot, we vacate the district court's judgment without reaching or addressing the issue concerning Governor Northam's entitlement to sovereign immunity.

III.

Pursuant to the foregoing, we vacate and remand for dismissal of this civil action as moot.

*VACATED AND REMANDED*

---

[7] Finally, we reject Lighthouse Church's contention that an as-applied challenge is never moot. In arguing that contention, Lighthouse relies on *Green v. City of Raleigh*, 523 F.3d 293, 300 (4th Cir. 2008). Its position, however, reveals a misunderstanding of our precedent and the mootness doctrine. In *Green*, an as-applied challenge to superseded ordinances was not mooted by newly adopted ordinances because the new ordinances were sufficiently similar to the prior ones, not because the plaintiff was pursuing an as-applied rather than a facial challenge. *See id.; see also Am. Legion Post 7 of Durham, N.C. v. City of Durham*, 239 F.3d 601, 606 (4th Cir. 2001) (ruling that as-applied challenge to superseded ordinance was moot).

16