**NOT PRECEDENTIAL**

UNITED STATES COURT OF APPEALS
FOR THE THIRD CIRCUIT
_____

No. 21-1795
_____

MATTHEW JOHNSON; CHARLES KRAVITZ; MARGARITA JOHNSON; UNION
LAKE ENTERPRISES, LLC; JOHN JOHNSON; DAWN JOHANSON-KRAVITZ;
ANDREW VAN HOOK; LITTLE HARRY'S, LLC; TWO BEARS PROPERTY
MANAGEMENT

v.

GOVERNOR OF NEW JERSEY; ATTORNEY GENERAL NEW JERSEY;
COMMISSIONER NEW JERSEY DEPARTMENT OF HEALTH AND SENIOR
SERVICES

Charles Kravitz; Margarita Johnson; Union Lake Enterprises, LLC; John
Johnson; Dawn Johanson-Kravitz; Andrew Van Hook; Little Harry's, LLC;
Two Bears Property Management,
                                    Appellants
_____

On Appeal from the United States District Court
for the District of New Jersey
(D.C. Civil No. 1-20-cv-06750)
District Judge: Honorable Noel L. Hillman
_____

Argued: January 19, 2022
_____

Before: JORDAN, RESTREPO, and PORTER,
*Circuit Judges*

(Filed:  March 14, 2022)

Jared McClain **[ARGUED]**
Institute for Justice
901 North Glebe Road
Suite 900
Arlington, VA 22203

Kara M. Rollins
New Civil Liberties Alliance
1225 19th Street, N.W.
Suite 450
Washington, DC 20036

*Counsel for Appellants*

Andrew J. Bruck
Jeremy M. Feigenbaum
Alec Schierenbeck **[ARGUED]**
Stuart M. Feinblatt
Timothy Sheehan
Office of Attorney General of New Jersey
Division of Law
25 Market Street
Hughes Justice Complex
Trenton, NJ 08625

*Counsel for Appellees*

Joseph C. O'Keefe
Proskauer Rose
11 Times Square
17th Floor
New York, NY 10036

*Counsel for Amici Curiae Fair Share Housing Center, Lawyers Committee for Civil Rights Under Law, Housing & Community Development Network of New Jersey, National Association for the Advancement of Colored People New Jersey State Conference, and New Jersey Latino Action Network*

_____

OPINION*

_____

PORTER, *Circuit Judge*.

Appellants (collectively, "Landlords") are residential landlords. They allege that New Jersey Governor Phil Murphy ("the Governor") and other state officials violated the Contracts Clause of the United States Constitution by issuing an executive order allowing tenants to apply security deposits to past-due rents. They sought declaratory and injunctive relief. While this appeal was pending, the executive order expired by operation of law. This type of order is not reasonably likely to recur, and dismissal would have no collateral consequences, so the appeal is moot.

I

In response to the onset of the COVID-19 pandemic, Governor Murphy declared a public health emergency and a separate state of emergency. Exec. Order No. 103, 52 N.J. Reg. 549(a) (Apr. 6, 2020). Under this declaration, the Governor has promulgated over one hundred executive orders. *See Executive Orders of Governor Phil Murphy*, The Official Site of the State of New Jersey (last visited Mar. 09, 2022), https://perma.cc/5PWL-QQXL.

One of those orders, Executive Order 128 ("EO 128"), suspended the usual procedures governing the use of security deposits and permitted tenants to apply their

_____

* This disposition is not an opinion of the full Court and pursuant to I.O.P. 5.7 does not constitute binding precedent.

security deposit funds to rental payments. Exec. Order No. 128, 52 N.J. Reg. 1043(a) (May 18, 2020). More specifically, EO 128 required Landlords, upon written request from a tenant, to apply a tenant's security deposit "towards rent payments due or to become due from the tenant during the Public Health Emergency established in Executive Order No. 103 (2020) or up to 60 days after the Public Health Emergency terminates." *Id*.

In June of 2021, while this appeal was pending, Governor Murphy ended the public health emergency. He also signed legislation providing that most of the COVID-related executive orders he issued, including EO 128, "shall expire" within thirty days. N.J. Stat. Ann. § 26:13-32; Exec. Order No. 244, 53 N.J. Reg. 1131(a) (July 6, 2021).

Landlords each rent residential properties by written lease agreements requiring a security deposit. Two of the lease agreements expressly prohibit the use of a security deposit for payment of rent. Tenants bound by one of the leases used their security deposit to pay outstanding rent and left the property in disrepair. The landlords of that property allege that they sued the tenants in small-claims court and reached a settlement that left the landlords with $200 less than the cost they incurred repairing the damage to their property.

Landlords filed an amended complaint seeking declaratory and injunctive relief, alleging several violations of federal and state constitutional law. The Governor moved to dismiss the complaint entirely. The parties stipulated to a voluntary dismissal of Landlords' state-law claims. Landlords then filed their state-law claims in state court,

where they lost. *See Kravitz v. Murphy*, 260 A.3d 880, 904 (N.J. Super. Ct. App. Div. 2021).

The District Court dismissed the remaining federal claims. Landlords timely appealed the District Court's decision. They have forfeited all their claims except the Contracts Clause claim. The Governor moved to dismiss the appeal as moot.

## II[1]

### A

Landlords argue that collateral estoppel benefits prevent this case from being moot. To prevent mootness, collateral consequences in the form of collateral estoppel must involve the same parties and be likely, not conjectural or hypothetical. *See United Steel Paper & Forestry Rubber Mfg. Allied Indus. & Serv. Workers Int'l Union AFL-CIO-CLC v. Gov't of V.I.*, 842 F.3d 201, 209–10 (3d Cir. 2016) [hereinafter *USW*] (finding collateral consequences involving preclusion between the parties to the suit in specific parallel proceedings); *see also Nat'l Iranian Oil Co. v. Mapco Int'l, Inc.*, 983 F.2d 485, 490 (3d Cir. 1992) (same); *In re Establish Inspection of The Metal Bank of Am., Inc.*, 700 F.2d 910, 913–14 (3d Cir. 1983) (same); *see also Cinicola v. Scharffenberger*, 248 F.3d 110, 119 (3d Cir. 2001) (holding case against employment

---

[1] The District Court had subject-matter jurisdiction under 28 U.S.C. § 1331. Moot or not, we have appellate jurisdiction under 28 U.S.C. § 1291. *Hartnett v. Pa. State Educ. Ass'n*, 963 F.3d 301, 305 (3d Cir. 2020).

contract assignee not moot because of threatened non-compete clause enforcement actions against employees and, alternatively, the availability of rejection damages).

Landlords try to invoke this doctrine by suggesting that some of them may be able to recover contracted-for penalties in future private arbitration or state court proceedings against their tenants if they obtain a declaratory judgment against the state defendants here. But declaratory judgments, like equitable remedies, operate on a "specific party," and "do not simply operate on legal rules in the abstract." *California v. Texas*, 141 S. Ct. 2104, 2115 (2021) (quotation marks omitted). None of the state defendants involved will be a party to such future proceedings, so a declaratory judgment here provides Landlords no specific relief. And as much as Landlords believe the tenants would be precluded from disputing the validity of the executive order in future litigation, that kind of non-mutual offensive issue preclusion would violate due process. *See Blonder-Tongue Lab., Inc. v. Univ. of Ill. Found.*, 402 U.S. 313, 329 (1971) ("Due process prohibits estopping [nonparties] despite one or more existing adjudications of the identical issue which stand squarely against their position."). Moreover, EO 128 did not alter Landlords' legal rights to recover damages caused by tenants to their property, as were exercised by some landlords here in a separate small-claims action, so the validity of EO 128 is irrelevant to hypothetical actual-damages claims against tenants. *See Kravitz*, 260 A.3d at 903. "Seeking to litigate this ostensible controversy now over unfiled, potential future damages claims is the very sort of speculative, 'hypothetical' factual scenario that would

6

render such a declaratory judgment a prohibited advisory opinion." *Schell v. OXY USA Inc.*, 814 F.3d 1107, 1115 (10th Cir. 2016) (alterations and quotation marks omitted).

B

Generally, we do not dismiss a case as moot if the defendant voluntarily ceases allegedly improper behavior but can return to it at any time. This exception guards against a defendant who "engage[s] in unlawful conduct, stop[s] when sued to have the case declared moot, then pick[s] up where he left off, repeating this cycle until he achieves all his unlawful ends." *Already, LLC v. Nike, Inc.*, 568 U.S. 85, 91 (2013). Ordinarily, the defendant "bears the formidable burden of showing that it is absolutely clear the allegedly wrongful behavior could not reasonably be expected to recur." *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 190 (2000). But when, as here, executive orders "expired by their own terms and not as a response to the litigation," the voluntary cessation exception does not apply. *Cnty. of Butler v. Governor of Pa.*, 8 F.4th 226, 230 (3d Cir. 2021) (citing *Trump v. Hawaii*, 138 S. Ct. 377 (2017) (Mem.)).

EO 128 expired by its own predetermined terms and not as a response to the litigation. While it is true that the Governor of New Jersey still has the "power to issue new executive orders involving COVID-19-related restrictions," what matters here is that EO 128 expired. *Lighthouse Fellowship Church v. Northam*, 20 F.4th 157, 163–64 (4th Cir. 2021). After all, plaintiffs only have standing in the first place to challenge an officer's allegedly unlawful conduct, not his abstract power. *See California*, 141 S. Ct. at 2116–17. Here, EO 128 ended when the public health emergency did. And EO 128 was

7

also independently repealed together with over one hundred other executive orders through a sweeping act of the New Jersey legislature signed by the Governor. N.J. Stat. Ann. § 26:13-32. There is no evidence that the Governor strategically ended the order in response to litigation or to evade judicial review. So the exception to mootness for voluntary cessation does not apply.

C

When a claimed injury occurs and ends quickly before the litigation process is completed, we can continue to exercise jurisdiction under the "capable of repetition yet evading review" doctrine. That is a "narrow exception that 'applies only in exceptional situations' where '(1) the challenged action is in its duration too short to be fully litigated prior to cessation or expiration, and (2) there is a reasonable expectation that the same complaining party will be subject to the same action again.'" *Hamilton v. Bromley*, 862 F.3d 329, 335 (3d Cir. 2017) (quoting *Spencer v. Kemna*, 523 U.S. 1, 17 (1998)). "A plaintiff bears the burden to show that the 'capable of repetition yet evading review' exception applies . . . ." *Butler*, 8 F.4th at 231.

Landlords did not carry their burden to show the Governor of New Jersey is likely to reenact a substantially similar executive order. For the alleged harm to recur, the Governor would have to promulgate another order mandating landlords credit tenants' security deposits toward their rent payments. As in *Butler*, Landlords merely argued that the Governor "still claims the power to issue orders of the sort before us." *Id*. That is not

8

enough. *See USW*, 842 F.3d at 209 ("[T]he mere power to reenact a challenged law is not enough.").

And even though the Governor retains the ability to reinstate the order, Landlords have not shown a demonstrated probability that he will enact another order to address "the economic fallout of COVID-19 and to reduce a wave of evictions that might exacerbate the spread of the virus." Appellees' Mot. to Dismiss Appeal as Moot at 6. So this case does not survive mootness as capable of repetition yet evading review.

## III

Collateral estoppel creates legal consequences from which a party may continue to suffer harm after an appeal has been mooted by events. Therefore, in civil cases, "[t]he established practice . . . is to reverse or vacate the judgment below and remand with a direction to dismiss." *United States v. Munsingwear, Inc.*, 340 U.S. 36, 39 (1950). We consider "whether the action became moot due to the appealing party's own conduct or circumstances beyond the party's control." *Butler*, 8 F.4th at 232 (citing cases). And "in circumstances where claims challenging legislation become moot due to the legislative body's subsequent amendment, vacatur is appropriate if there is no evidence that the change was made with an intent to manipulate the judicial system." *Id*. (citing *Khodara Envtl., Inc. ex rel. Eagle Envtl. L.P. v. Beckman*, 237 F.3d 186, 195 (3d Cir. 2001)).

Landlords did not moot the claims by their own actions, and neither did the Governor for the purpose of gamesmanship. The claims became moot because EO 128

expired by its own terms through the expiration of an independent public health emergency and legislation that also extinguished scores of other executive orders.

*    *    *

Under the circumstances, we will dismiss the appeal, vacate the judgment, and remand with instructions for the District Court to dismiss the complaint as moot.